IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KELLY RENEE GISSENDANER,

   Petitioner,

     v.

KATHY SEABOLT
Warden, Metro State Prison,

   Respondent.

CIVIL ACTION FILE
NO. 1:09-CV-69-TWT

## ORDER

This is a Petition for a Writ of Habeas Corpus. It is before the Court on the Respondent's Motion to Dismiss Procedurally Defaulted and Unexhausted Claims [Doc. 35], which is GRANTED in part and DENIED in part.

### I. Background

Petitioner Kelly Gissendaner and her co-defendant Gregory Owen were indicted in the Superior Court of Gwinnett County on May 1, 1997, on one count of malice murder and one count of felony murder. The State filed its notice of intent to seek the death penalty against the Petitioner on May 6, 1997. Following a jury trial, the Petitioner was convicted of malice murder. The Georgia Supreme Court summarized the facts as follows:

Gissendaner and the victim had been married, divorced, remarried, separated, and reunited between 1989 and 1997. Ms. Gissendaner was in a relationship with Gregory Bruce Owen and at one point stated to a coworker that she was unhappy with her husband and in love with Owen.

Prior to Gissendaner's trial, Owen entered an agreement not to seek parole within 25 years, pled guilty, and received a sentence of life in prison. Owen testified at Gissendaner's trial that it was she who first raised the idea of murder and that she later raised the idea again several other times. Owen suggested divorce as an alternative, but Gissendaner insisted upon murder because she believed she would receive insurance money from her husband's death and because she believed he "wouldn't leave [her] alone by just divorcing him." Gissendaner had previously stated to Owen's sister that she intended to use the victim's credit to get a house and then "get rid of him."

During the days leading up to the murder, Gissendaner made 47 telephone calls to Owen and paged him 18 times. Telephone records also showed that the pair were together at a bank of payphones several hours before the murder. On the evening of February 7, 1997, Gissendaner drove Owen to her family's home, gave him a nightstick and a large knife, and left him inside the home to wait for the victim. Gissendaner then drove to a friend's house, and, upon Gissendaner's insistence that the group keep their plans for the evening, she and her friends went out to a nightclub.

The victim arrived home shortly after 10:00 p.m. Owen confronted the victim from behind, held a knife to his throat, forced him to drive to a remote location, forced him to walk into the woods and kneel, and then killed him by striking him with the nightstick and then stabbing him repeatedly in the back and neck with the knife. As instructed by Gissendaner, Owen took the victim's watch and wedding ring before killing him to make the murder appear like a robbery.

Gissendaner returned home from the nightclub at about the time the murder was being carried out, paged Owen with a numeric signal, and then drove to the crime scene. After inquiring if her husband was dead, she took a flashlight and went toward the body to inspect it. Owen

> burned the victim's automobile with kerosene provided by Gissendaner, and the pair returned to their respective homes in Gissendaner's automobile. Owen disposed of the nightstick, the knife, a pair of his own jeans, and the victim's stolen jewelry by placing them in the garbage. A pair of Owen's sweat pants also worn on the night of the murder was recovered, however, and DNA analysis of blood found on them showed a likely match with the victim's and Owen's blood.
>
> After the murder, Gissendaner concealed her relationship with Owen from police and claimed not to have initiated contact with him for some time. Telephone records, Owen's testimony, and other witness testimony proved otherwise. After her arrest, Gissendaner called her best friend and confessed to her active and willing role in the murder, although she then called a second time and claimed that she was coerced into participating. Gissendaner wrote a letter while in jail in an effort to hire someone to give perjured testimony and to rob and beat witnesses.

Gissendaner v. State, 272 Ga. 704, 705 (2000).

At the sentencing phase of the trial, the jury found two aggravating circumstances: (1) that the murder of Douglass Gissendaner was committed during the commission of a kidnaping with bodily injury, see O.C.G.A. § 17-10-30(b)(2); and (2) that the Petitioner caused or directed another to commit murder, see O.C.G.A. § 17-10-30(b)(6). The Petitioner was sentenced to death. The Georgia Supreme Court affirmed the Petitioner's conviction and sentence on direct appeal and denied her motion for reconsideration. Gissendaner, 272 Ga. at 704. The United States Supreme Court denied her petition for a writ of certiorari and her motion for rehearing. Gissendaner v. Georgia, 531 U.S. 1196 (2001) (rehearing denied, 532 U.S. 1003 (2001)).

On December 18, 2001, the Petitioner filed a habeas corpus petition in the Superior Court of DeKalb County. (Resp. Ex. 80.) The court held an evidentiary hearing on December 13 and 14, 2004. On February 16, 2007, the court denied the petition. (Resp. Ex. 123.) On appeal, the Georgia Supreme Court affirmed the Superior Court's denial of relief and denied the Petitioner's motion for reconsideration. On January 9, 2009, Gissendaner petitioned this Court for a writ of habeas corpus. The Respondent now moves to dismiss the Petitioner's procedurally defaulted and unexhausted claims.

## II. Discussion

### A. Unexhausted Claims

A state prisoner must exhaust all available state court procedures before seeking federal habeas review. 28 U.S.C. § 2254(b). In other words, the issue raised in federal court must have been "fairly presented" to the state court or the matter will be dismissed. Picard v. Connor, 404 U.S. 270, 275 (1971). A habeas petitioner may, however, supplement the evidence for a claim already presented in state court. Vasquez v. Hillery, 474 U.S. 254, 257-58 (1986).

#### 1. Claim I

In Claim I, the Petitioner alleges that she received ineffective assistance of counsel at trial and on appeal. The Respondent argues that the Petitioner did not

exhaust the ineffective assistance claims set forth in paragraph 23, subparagraphs u, bb, cc, vv, zz, and ddd of her amended petition and therefore may not assert these claims in federal court.[1]  The Petitioner does not address these claims in her response brief.   Accordingly, the Respondent's motion to dismiss these claims as unexhausted is granted.

      2.    <u>Claim II</u>

In Claim II, the Petitioner alleges prosecutorial misconduct.  The Respondent argues that the Petitioner failed to exhaust the claims set forth in paragraphs 147, 151, and 152 of her amended petition and therefore may not assert these claims in federal court.  The Petitioner does not address these claims in her response brief.  Accordingly, the Respondent's motion to dismiss these claims as unexhausted is granted.

      3.    <u>Claim II, Note 6, Claim VII, Note 12, and Claim IX, Note 15</u>

In Claim II, footnote 6, the Petitioner argues that she received ineffective assistance of counsel when her attorneys failed to raise at trial or on appeal a claim that state agents engaged in improper communications with jurors.  In Claim VII, footnote 12, she alleges that she received ineffective assistance when her attorneys

---

[1] In her opening brief, the Respondent also argues that the ineffective assistance claims set forth in paragraph 23, subparagraphs t and nn are unexhausted.  However, she concedes in her reply brief that these claims are properly exhausted.

failed to raise at trial or on appeal a claim that her execution would constitute a miscarriage of justice. In Claim IX, footnote 15, she argues that she received ineffective assistance when her attorneys failed to raise at trial or on appeal a claim that O.C.G.A. § 17-10-30(b)(2) and (b)(6) are unconstitutionally vague and arbitrary.

The Petitioner included similar allegations in her amended state habeas petition but did not provide evidence or a substantive argument in support. (See Resp. Ex. 80a ¶¶ 159, 163, 184, 185; Resp. Ex. 123 at 32.) Therefore, the court treated the Petitioner's allegations as to trial counsel as abandoned. (Resp. Ex. 123 at 32.) Because the Petitioner's habeas counsel also served as her appellate counsel, however, the court held that the Petitioner's claims as to appellate counsel were not ripe for review and declined to treat the claims as abandoned. (Resp. Ex. 123 at 32, n. 5.) Accordingly, the Respondent's motion to dismiss these claims as to trial counsel's performance is granted. However, the Respondent's motion to dismiss these claims as to appellate counsel's performance is denied.

B.  Procedurally Defaulted Claims

A state prisoner who defaulted a federal claim in state court pursuant to an independent and adequate state procedural rule cannot raise that claim in federal court unless she can (1) "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) show that "failure to consider the claim

will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). The Supreme Court has identified "three circumstances in which sufficient cause for a state procedural default can be demonstrated: inability of counsel to reasonably know of a legal or factual issue, interference by the government's attorney with the habeas petitions, and ineffective assistance of counsel." Erwin Chemerinsky, Federal Jurisdiction 950 (5th ed.) (2006). Likewise, the Supreme Court has recognized that "a fundamental miscarriage of justice" will result if a prisoner who is "actually innocent" of a crime or a death sentence is barred from asserting a procedurally defaulted claim in federal court. Schlup v. Delo, 513 U.S. 298, 327 (1995); Sawyer v. Whitley, 505 U.S. 333, 336 (1992).

      1.    Claim XII

In Claim XII, paragraph 223, the Petitioner asserts that the grand jury indictment was invalid. The state habeas court found that this claim was procedurally defaulted because the Petitioner failed to raise it on appeal. (Resp. Ex. 123 at 16.) The Georgia rule precluding collateral review of issues not raised on appeal is an independent and adequate state procedural rule that precludes this Court from hearing and deciding the issue unless the Petitioner shows cause and prejudice or actual innocence. In sections II(B)(4) and II(B)(5), the Court addresses the Petitioner's argument that both exceptions apply.

In Claim XII, paragraphs 224 and 225, the Petitioner alleges that the jury pools from which the grand and traverse juries were drawn were unconstitutionally composed and that the jury commissions that selected these jury pools were unconstitutionally composed. The state habeas court found that these claims were raised and rejected on direct appeal and therefore barred from collateral review under Georgia law. (Resp. Ex. 123 at 10.) However, the Georgia rule precluding habeas review of issues litigated on direct appeal is not an independent and adequate state ground that precludes this Court from hearing and deciding the issue. Crowe v. Head, 356 F. Supp. 2d 1339, 1348 (N.D. Ga. 2005). Accordingly, the Respondent's motion to dismiss as procedurally defaulted the portions of Claim XII set forth in paragraphs 224 and 225 of the amended petition is denied.

2. Claim XXIX

In Claim XXIX, the Petitioner alleges that the trial court erred in excusing for cause potential jurors whose views on the death penalty were not extreme enough to warrant exclusion. The state habeas court found that this claim was raised and rejected on direct appeal and therefore barred from collateral review under Georgia law. (Resp. Ex. 123 at 12.) As stated above, the Georgia rule precluding habeas review of issues litigated on direct appeal is not an independent and adequate state ground that precludes this Court from hearing and deciding the issue. Crowe v. Head,

356 F. Supp. 2d 1339, 1348 (N.D. Ga. 2005). However, the Respondent asserts that the state court erred in holding that the claim was decided on direct appeal. She asserts that the Petitioner did not raise the claim on appeal and argues that the claim is instead procedurally defaulted under the Georgia rule precluding collateral review of issues not raised on appeal.

Even if the state court erred, this Court will not assume the claim is defaulted pursuant to an adequate and independent state procedural rule. In Harris v. Reed, the Supreme Court held that "a procedural default does not bar consideration of a federal claim on . . . habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263 (1989). The Court rejected an alternate rule that would allow federal habeas courts to presume state court judgments rested on a procedural bar when state court decisions were ambiguous. Id. at 263-64. The Court reasoned that the alternate rule "would impose substantial burdens on the federal courts" by requiring them "to examine the state-court record to determine whether procedural default was argued to the state court" or "undertake an extensive analysis of state law to determine whether a procedural bar was potentially applicable to the particular case." Id. at 264-65. Here, the Respondent can show at most that the state court order denying relief is ambiguous. Therefore, because the state court did not "clearly and

expressly state[] that its judgment rested on a procedural bar," the Respondent's motion to dismiss Claim XXIX as procedurally defaulted is denied.

### 3. Remaining Claims

The Respondent argues that Claims III, IX, XI, XIV, XV, XVIII, XIX, XX, XXI, XXII, XXV, and XXVI and portions of Claims II, IV, and X should be dismissed as procedurally defaulted. In general, these are boilerplate claims with no particular facts connected to the Petitioner's case. Except for Claim III, the state habeas court held that each claim was procedurally defaulted under the Georgia rule precluding collateral review of issues not raised on appeal, an independent and adequate state procedural rule. (Resp. Ex. 123 at 8-9, 13-19.) The Petitioner does not dispute that these claims are procedurally defaulted. Instead, she argues that the procedural defaults should be excused because she can demonstrate cause and prejudice and show that she is actually innocent.

### 4. Miscarriage of Justice Exception

The Supreme Court has recognized that "a fundamental miscarriage of justice" will result if a prisoner who is "actually innocent" of a crime or a death sentence is barred from asserting a procedurally defaulted claim in federal court. See Schlup v. Delo, 513 U.S. 298, 327 (1995); Sawyer v. Whitley, 505 U.S. 333, 336 (1992). In Sawyer v. Whitley, the Supreme Court held that for an individual to demonstrate that

he is "actually innocent of the death penalty," he must "show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law." Sawyer, 505 U.S. at 336. In other words, the petitioner must show that an alleged constitutional error implicates <u>all</u> of the aggravating factors found to be present by the sentencing body. See Johnson v. Singletary, 938 F.2d 1166, 1183 (11th Cir. 1991).

The Petitioner does not claim that she was actually innocent of her husband's murder. Indeed, the evidence against her on the question of guilt was overwhelming. Here, the jury found two aggravating circumstances: (1) that the murder of Douglass Gissendaner was committed during the commission of a kidnaping with bodily injury, see O.C.G.A. § 17-10-30(b)(2); and (2) that the Petitioner caused or directed another to commit murder, see O.C.G.A. § 17-10-30(b)(6). The Petitioner argues that she is "actually innocent" of the death penalty because neither aggravating factor applies. Section 17-10-30(b)(2) of the Georgia Code authorizes the imposition of the death penalty where "the offense of murder, rape, armed robbery, or kidnaping was committed while the offender was engaged in the commission of another capital felony or aggravated battery . . . ." The Petitioner argues that Owen committed the kidnaping and therefore § 17-10-30(b)(2) may not be applied to her. Under Georgia law, however, Owen's crimes are imputed to the Petitioner. See Nelms v. State, 285

Ga. 718, 719 (2009) (holding that an individual is "guilty as a party to the crime if they intentionally aid, abet, encourage, facilitate, assist, or are otherwise concerned in the commission of the acts that constitute the crime."). The evidence shows that Owen kidnaped and murdered Douglass Gissendaner and that the Petitioner participated in planning the murder. Therefore, the jury did not err in applying O.C.G.A. § 17-10-30(b)(2) to the Petitioner.

The Petitioner also argues that O.C.G.A. § 17-10-30(b)(6) does not apply because she did not "cause or direct" Owen to murder Douglass Gissendaner. She asserts that the jury's finding was based predominantly on false testimony by Owen. The state court rejected this argument:

> The evidence in this case does not rest solely on the testimony of Greg Owen. The State had phone records proving that Petitioner called Owen 47 times and paged him 18 times in the days leading up to the murder. There were also phone records that she and Owen were together at the same bank of payphones prior to the murder and made phone calls returning pages almost simultaneously. Petitioner initially withheld information from the police concerning her relationship with Owen while the Victim was still missing. She confessed her involvement in the crime to her friend Pam Korgut. The Victim's sister testified that Petitioner stated that she wanted to use the Victim to get a house and then planned to get rid of him. Finally, Petitioner mailed a letter to fellow inmate complete with a diagram of her house and a scenario for the involvement of a third person in the crime. In the scenario, Petitioner purported to be a victim, held at gunpoint while Owen murdered her husband. The letter also included a list of State witnesses including Korgut. Laura McDuffie, the recipient of the letter testified that Gissendaner offered $10,000 (or $4,000) if a third party would claim responsibility in the crime. Petitioner was the beneficiary of two life

> insurance polices on the Victim in the amounts of $10,000.00 each. The recipient also testified that Petitioner sought to have the State witnesses beaten and robbed.

(Resp. Ex. 123 at 25-26.) This Court agrees that other evidence adequately supports the jury's finding that the Petitioner "caused or directed" Owen to murder Douglass Gissendaner. Accordingly, the Petitioner cannot show that either aggravating factor was improperly applied. Certainly, she cannot show that <u>both</u> factors were improperly applied. Therefore, she cannot satisfy the "very narrow" actual innocence exception adopted in <u>Sawyer</u>. Claim XX is not ripe for review and has not been procedurally defaulted. See <u>Panetti v. Quarterman</u>, 551 U.S. 930, 947 (2007).

### 5. Cause and Prejudice Exception

In <u>Murray v. Carrier</u>, the Supreme Court recognized that a habeas petitioner may demonstrate cause by showing that "the procedural default is the result of ineffective assistance of counsel." <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). Here, the Petitioner argues that defense counsel's failure to raise the procedurally defaulted issues on appeal amounts to ineffective assistance and demonstrates cause for the procedural defaults. In <u>Strickland v. Washington</u>, the Supreme Court adopted "a strong presumption" that an attorney's decisions do not amount to ineffective assistance. <u>Strickland v. Washington</u>, 466 U.S. 668, 689 (1984). The Court explained that "[i]ntensive scrutiny of counsel . . . could dampen the ardor and impair the

independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client." Id. at 690. To establish ineffective assistance under Strickland, a defendant must show that "counsel's representation fell below an objective standard of reasonableness." Id. at 688. The defendant must also show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

To show that defense counsel's performance was unreasonable, the Petitioner cites the American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases. The ABA Guidelines instruct attorneys to "litigate all issues, whether or not previously presented, that are arguably meritorious under the standards applicable to high quality capital defense representation, including challenges to any overly restrictive procedural rules." ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, Guideline 10.15.1(C). The Petitioner fails to demonstrate, however, how her attorneys failed to comply with these guidelines. She does not show how the procedurally defaulted claims are "arguably meritorious." Nor does she offer any other support for her ineffective assistance argument. Given the "strong presumption" of effective assistance adopted in Strickland, the Court finds the Petitioner's ineffective assistance argument unpersuasive for two reasons.

First, even if the Petitioner could show that her attorneys did not comply with ABA guidelines, such guidelines are not dispositive as to whether an attorney rendered reasonable representation. In Strickland, the Supreme Court described the proper role of the ABA guidelines in ineffective assistance cases:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in American Bar Association standards and the like . . . are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant.

Strickland, 466 U.S. at 688-89.

Second, the Supreme Court has recognized that an attorney's failure to raise all arguably meritorious issues on appeal, even when inadvertent, does not typically amount to ineffective assistance. For example, in Murray v. Carrier, the Supreme Court considered whether a habeas petitioner could show cause for a procedural default by demonstrating that defense counsel inadvertently failed to raise an issue on appeal. The Court concluded that there was not sufficient cause because the attorney's inadvertence did not amount to ineffective assistance of counsel. Murray, 477 U.S. at 486. ("The mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute

cause for a procedural default."). Here, the Petitioner offers no additional support for her ineffective assistance argument. Accordingly, she has not shown how defense counsel's performance fell below an objective standard of reasonableness in light of the strong presumption of effectiveness adopted in Strickland. Therefore, the Respondent's motion to dismiss Claims IX, XI, XIV, XV, XVIII, XIX, XXI, XXII, XXV, and XXVI and portions of Claims II, IV, X, and XII as procedurally defaulted is granted. The motion is denied as to Claims III and XX.

## III. Conclusion

For the reasons stated above, the Respondent's Motion to Dismiss Unexhausted and Procedurally Defaulted Claims [Doc. 35] is GRANTED in part and DENIED in part. The following claims are dismissed as unexhausted: Claim I, paragraph 23, subparagraphs u, bb, cc, vv, zz, and ddd; Claim II, paragraphs 147, 151, and 152; and portions of footnotes 6, 12, and 15. The following claims are dismissed as procedurally defaulted: Claim II, paragraph 148; Claim IV, paragraphs 161 and 162; Claim IX; Claim X, second sentence of paragraph 218; Claim XI; Claim XII, paragraph 223; Claim XIV; Claim XV; Claim XVIII; Claim XIX; Claim XXI; Claim XXII; Claim XXV; and Claim XXVI.

SO ORDERED, this 22 day of February, 2010.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge